# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| EXTREME TECHNOLOGIES, LLC<br><br>Plaintiff,<br><br>vs.<br><br>STABIL DRILL SPECIALTIES, LLC<br><br>Defendant. | Civil Action No. 4:19-CV-01977 |

**EXTREME TECHNOLOGIES'S RESPONSE TO
STABIL DRILL'S MOTION FOR INTRA-DISTRICT TRANSFER**

Plaintiff Extreme Technologies, LLC ("Extreme") files this response to the motion for intra-district transfer to Judge Lynn N. Hughes (Doc. 32), filed by Stabil Drill Specialties, LLC ("Stabil Drill").

## I. BACKGROUND

On February 15, 2019, Extreme filed a lawsuit against Stabil Drill in the United States District Court for the Southern District of Texas – Houston Division. *See* Doc. 1, *Original Complaint,* Civil Action No. 4:19-cv-00539 (the "Texas Lawsuit").

At 1:25 p.m. on February 21, 2019, Extreme filed a *Notice of Dismissal of Complaint – Without Prejudice* under Rule 41(a)(1)(A)(i), Fed. R. Civ. P. (Doc. 5 Texas Lawsuit). According to Rule 41, this action immediately and unilaterally dismissed the Texas lawsuit without prejudice.

At 1:40 p.m. the same day, February 21, 2019, Extreme filed a new lawsuit against Stabil Drill in the venue where Stabil Drill resides[1] – Lafayette, Louisiana, Stabil Drill's self-described "World Headquarters" and "principal place of business." (Doc. 1, Louisiana case).

At 4:57 p.m. the same day, over three and one-half hours after the completed dismissal of the Texas Lawsuit, Judge Lynn Hughes improperly issued an order entitled "Final Dismissal" stating: "***If <u>refiled in</u> or <u>removed to</u> the Southern District of Texas, the case will be assigned to Judge Hughes***." (Doc. 6, Texas Lawsuit) (emphasis added).

On April 29, 2019, Stabil Drill moved to dismiss the Louisiana lawsuit for improper venue, or in the alternative to transfer it to Houston Texas for the convenience of the parties and witnesses. (Doc. 17, Louisiana case).

On May 30, 2019, the district court in the Louisiana Lawsuit found that venue was <u>proper</u> in Louisiana because Stabil Drill resides in Louisiana. However, the Louisiana court ruled that the case should be transferred to Houston for the convenience of the parties and witnesses. (Doc. 29 at 3).

On May 31, 2019, the Louisiana Lawsuit was transferred to the United States District Court for the Southern District of Texas – Houston Division. (Doc. 31). Under the Southern District's random assignment system, this case was assigned to the Honorable Alfred H. Bennett.

On June 6, 2019, Stabil Drill moved for the Louisiana Lawsuit to be assigned to Judge Hughes. (Doc. 32).

---

[1] Under the first prong of the patent venue statute, 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district <u>where the defendant resides</u>")(emphasis added).

Stabil Drill cites Judge Hughes's order, which does not apply to the current situation because this case was neither "filed in" nor "removed to" the Southern District. Further, as described below, the order was entered without jurisdiction.

## II. ARGUMENT AND AUTHORITIES

### A. Judge Hughes's June 21, 2019 Order (Doc. 6, Texas Lawsuit)

#### 1. Extreme's Rule 41(a)(1)(A)(i) Dismissal was Self Executing, Immediately and Unilaterally Depriving Judge Hughes of Jurisdiction Over The Lawsuit

Extreme dismissed the Texas Lawsuit at 1:25 p.m. on February 21, 2019 under Rule 41(a)(1)(A)(i) of Fed. R. Civ. P. (Doc. 5, Texas Lawsuit). Judge Hughes's so-called "Final Judgment" (Doc. 6, Texas Lawsuit) was entered several hours <u>after</u> the Texas Lawsuit was dismissed. He had no jurisdiction to sign the order.

<u>Judge Hughes has already been told by the Fifth Circuit that he cannot enter an order after a Rule 41(a)(1)(A)(i) dismissal</u>. Directly on point is *Bechuck v. Home Depot U.S.A., Inc.,* 814 F.3d 287, 291 (5th Cir. 2016) which specifically addressed *another* of Judge Hughes's improper attempts to place conditions upon a plaintiff's Rule 41(a)(1)(A)(i) dismissal rights. In that case, plaintiff Bechuck filed a notice of voluntary dismissal without prejudice against defendant ASM pursuant to Rule 41(a)(1)(A)(i), Fed. R. Civ. P. Later the same day – just like he did in this case – Judge Hughes issued a so-called "Final Dismissal," ordering that "*[i]f Bechuck sues Advantage (ASM) for the same cause of action, he must do so before this court*." *Id.* at 290 (emphasis added). Bechuck – just like Extreme in this case – contended on appeal that Judge Hughes did not have jurisdiction to impose a filing restriction on the voluntary dismissal of claims against ASM under Rule 41. ASM responded – just like Stabil Drill in this case – that Judge Hughes had authority to place such a restriction. The Fifth Circuit expressly rejected ASM's argument and reversed Judge

3

Hughes. Citing *Yesh Music v. Lakewood Church*, 727 F. 3d 356, 359 (5th Cir. 2013) and *Harvey Specialty & Supply, Inc.,* 434 F. 3d 320, 324 (5th Cir. 2005), the Fifth Circuit held:

> [**T**]**he plaintiff is free** to return to the dismissing court **or other courts** at a later date with the same claim. **By placing him back into the situation as though he had never brought suit, Rule 41(a)(1)(A)(i) necessarily** *allows him to choose his forum anew*."

*Id.* at 293. The Fifth Circuit further held:

> Rule 41(a)(1)(A)(i) provides that "the plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." "Unless the notice or stipulation states otherwise, the dismissal is without prejudice." FED. R. CIV. P. 41 (a)(1)(B). "**The notice of dismissal is self-effectuating and terminates the case in and of itself; no order or other action of the district court is required**." *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015) (per curiam).
>
> Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. **So long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk**. That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and **the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file**. Its alpha and omega was the doing of the plaintiff alone. He suffers no impairment beyond his fee for filing; *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963): *see also Amerijet*, 785 F.3d at 973 (affirming *Am. Cyanamid*).
>
> Thus, once a plaintiff has moved to dismiss under Rule 41(a)(1)(A)(i), "the case [i]s effectively terminated." *Williams v. Ezell*, 531 F.2d 1261, 1263–64 (5th Cir. 1976). "**The court ha[s]** *no power or discretion* **to deny plaintiffs' right to dismiss or** *to attach any condition or burden to that right*." *Id.* "Accordingly, the district court may not attach any conditions to the dismissal." *Amerijet*, 785 F.3d at 973.

*Id.* at 291. (Emphasis added).

The Fifth Circuit in *Bechuck* noted that Judge Hughes's order dismissing ASM's co-defendant Home Depo – which added a condition requiring Bechuck to refile other suits against Home Depo in his court – is "difficult to understand." *Id*. at 294. The Court addressed the

4

possibility that Judge Hughes was relying on Rule 41(a)(2), Fed. R. Civ. P. If so, his order was an abuse of discretion:

> [We] cannot sustain the refiling restriction. To rule otherwise would unnecessarily prevent Bechuck from returning to the legal position he had before the suit. **The court abused its discretion in attaching the filing condition to its Rule 41(a)(2) dismissal**.

*Id*. at 299 (emphasis added). Judge Hughes has been found many times by the Fifth Circuit to have abused his discretion. This particular finding was for exactly the same conduct as in the case at bar. Judge Hughes is, plainly, unconcerned about the Fifth Circuit's interpretation of the law as it applies to him personally. That is a significant problem. Judge Hughes deprives civil plaintiffs of a fair forum, forcing them to waste money on appeals that should be unnecessary, settle on unfavorable terms, or simply quit. Stabil Drill knows this. That is why it is trying so hard to get the case before Judge Hughes.

"[A] plaintiff's right to file a notice of dismissal under Rule 41(a)(1)(A)(i) before the service of an answer or motion for summary judgment is absolute and unconditional." 8 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 41.33[2] (Matthew Bender 3d ed. 2006) (citing *Carter v. United States,* 547 F.2d 258, 259 (5th Cir. 1977)) (emphasis added). Dismissal pursuant to rule 41(a)(1)(A)(i) is "a matter of right running to the plaintiff and *may not be* extinguished or *circumscribed* by adversary or *court*." *Am. Cyanamid,* 317 F.2d at 297 (emphasis added).

Extreme's notice of dismissal under Rule 41 was "self-executing." S*ee* 8 MOORE, *supra,* § 41.33[6][a]. Even "a perfunctory order of court closing the file" would be incorrect under the rules. *Am. Cyanamid Co. v. McGhee,* 317 F.2d 295, 297 (5th Cir. 1963). A plaintiff who dismisses under such circumstances "suffers no impairment beyond his fee for filing." *Id.* **The effect of the**

dismissal is "**to put the plaintiff in a legal position as if he had never brought the suit**." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equipment Inc.,* 434 F.3d 320, 324 (5th Cir. 2005)(emphasis added) (citing *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 603 (5th Cir. 1976)). Once a plaintiff has filed a rule 41 notice, "**any further action by the district court [is] neither necessary *nor of any effect*.**" *Scam Instrument Corp. v. Control Data Corp.,* 458 F.2d 885, 889 (7th Cir. 1972)(emphasis added).

An earlier case addressing this issue is *Int'l. Driver Training Inc. v. J-Bjrd Inc. et al.,* 202 Fed.Appx. 714 at *1 (5th Cir. 2006). In that case, plaintiff IDT filed a notice of dismissal under Rule 41(a)(1)(A)(i), Fed. R. Civ. P. The district court entered an order that added a condition that if IDT wanted to re-file the case, it must do so in the same court as the original filing. IDT appealed, claiming – just like Extreme in this case – that the court was without power to attach any conditions to the dismissal. *Id.* at 715. The Fifth Circuit agreed with IDT, holding that a plaintiff's right to dismissal under Rule 41(a)(1)(A)(i) is "unconditional" and may not be "circumscribed" by a court. *Id.* Simply put, any action by a district court after a plaintiff files a Rule 41 notice of dismissal "is neither necessary *nor of any effect*." *Id.* at 716 (emphasis added). Once the dismissal was filed, "the case effectively ceased." *Id.* "The district court was thereafter without jurisdiction to take further action, including placing limits on IDT's right to file in the future." *Id.*

Extreme filed its notice of dismissal under Rule 41(a)(1)(A)(i). Once the notice of dismissal was filed, the case ceased. The district court was without jurisdiction to take any action, including placing limits on Extreme's rights in the future. *See* 8 MOORE, *supra,* § 41.33[3] ("Unlike Rule 41(a)(2), Rule 41(a)(1) does not contain a provision authorizing the imposition of 'terms and conditions' on a dismissal. **The court thus lacks power to impose *any* condition on a dismissal made by notice**.")(emphasis added), *Cf. LeCompte,* 528 F.2d 601 (*reversing* order of

dismissal imposing the condition, among others, that "*any subsequent suit must be filed in the same court*.").

### 2. Judge Hughes's Order (Doc. 6, Texas Lawsuit) Does Not Compel Transfer

Judge Hughes's so-called "Final Dismissal" (Doc. 6, Texas Lawsuit) does not even apply to the current situation. It states:

> "If refiled in or removed to the Southern District of Texas, the case will be assigned to Judge Hughes."

Doc. 6, ¶2, Texas Lawsuit (emphasis added). The Louisiana Lawsuit was neither "*refiled in*" nor "*removed to*" the Southern District of Texas. Extreme filed the Louisiana Lawsuit in the proper venue under the patent venue statute – 28 U.S.C. § 1400(b). Correct venue was acknowledged by the Louisiana district court.[2] The district court in the Louisiana Lawsuit granted Stabil Drill's motion to transfer solely under 28 U.S.C. 1404(a) for the convenience of the parties and witnesses. Doc. 29.

Moreover, Judge Hughes's so-called "Final Dismissal" (Doc. 6, Texas Lawsuit) was made without jurisdiction, and therefore has absolutely no effect on this suit. *Thomas v. Phillips,* 83 Fed. Appx. 661, 662 (5th Cir. 2003) (Courts may not impose any terms or conditions on a 41(a)(1)(A)(i) dismissal.) As described above, the Fifth Circuit in *Bechuck v. Home Depot USA, Inc. et al.,* 814 F.3d 287, (5th Cir. 2016) held that this exact same tactic by Judge Hughes is an abuse of discretion. It was then, and it is now.

---

[2] Doc. 29 at 3 ("In the first prong of § 1400(b), patent infringement suits may be brought in the judicial district where the defendant 'resides.' … Stabil is a Louisiana LLC, formed in the State of Louisiana and does business in the State of Louisiana. Stabil 'resides' in Louisiana.")(emphasis added); *see also Id.* at 6 ("For the foregoing reasons, the Court finds that venue is proper in the Western District of Louisiana …")(emphasis added)

7

### 3. A Rule 41(a)(1)(A)(i) Dismissal and Re-Filing in the Another Venue is Not Improper

According to the reversal of Judge Hughes in *Bechuck v. Home Depot U.S.A., Inc.,* 814 F.3d 287, 293 (5th Cir. 2016):

> "Rule 41(a)(1) essentially *permits* forum shopping." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 n. 15 (5th Cir. 2005) (discussing *Wilson v. City of San Jose*, 111 F.3d 688, 694 (9th Cir. 1997)). It is not uncommon for plaintiffs to use voluntary dismissal to "secure their *preferred* forum," such as when they seek to undo removal and return to state court. *Id.* "While this may seem distasteful to opposing parties, we have consistently held that Rule 41(a)(1) means what it says ... [and] [d]efendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under Rule 41(a)(1) may do so by taking the simple step of filing an answer." *Id.* (alterations in original) (quoting *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977)).
>
> "**[T]he effect of a Rule 41(a)(1) dismissal is to put the plaintiff in a legal position as if he had never brought the first suit**." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 359 (5th Cir. 2013) (alteration in original) (quoting *Harvey Specialty & Supply, Inc.*, 434 F.3d at 324). **Therefore, "the plaintiff is free to return to the dismissing court or *other courts* at a later date with the same claim**." *Id.* **By placing him back into the situation as though he had never brought suit, Rule 41(a)(1)(A)(i) necessarily allows him to choose his forum anew. Upholding the refiling restriction would not return [Plaintiff] to the same legal position that he occupied before suit**.

(Emphasis added).

Stabil Drill's motion cites the Fifth Circuit decision in *Int'l Driver Training Inc. v. J–BJRD Inc.*, 202 Fed.Appx. 714 (5th Cir. 2006)(per curiam). However, in that decision, the Fifth Circuit rejected a refiling restriction like Judge Hughes's. *See Int'l Driver*, 202 Fed.Appx. at 716. The Fifth Circuit vacated the condition, observing that "[o]nce the order of dismissal was filed, the case effectively ceased." *Id.* (emphasis added). The district court was "without jurisdiction to take further action," including placing limitations on the plaintiff's "right to file in the future." *Id.* (emphasis added). The Fifth Circuit noted that judicial districts, if they choose, may adopt local

8

rules regarding assignments after Rule 41(a)(1)(A)(i) notices. *Bechuck,* 814 F.3d at 293 FN 7 (emphasis added), concurs with this view:

> Thus, district courts are free to adopt a rule "requir[ing] that a re-filed action be assigned to the original judge." *Int'l Driver Training Inc.*, 202 Fed.Appx. at 716. <u>Such a rule must be imposed at the *wholesale* level, however, and *may not be attached individually* as a condition on voluntary dismissals under Rule 41(a)(1)</u>.

The Southern District of Texas has not adopted such a rule. Once Extreme filed its Rule 41(a)(1)(A)(i) motion, Judge Hughes had no jurisdiction to attach any refiling restrictions. *Bechuck,* 814 F.3d at 294.

In the other case cited by Stabil Drill, the Fifth Circuit rejected yet *another* of Judge Hughes's improper post-Rule 41(a)(1)(A)(i) dismissal refiling conditions. *Garcia v. Int'l. Constr. Equip., Inc.,* 2019 WL 1782665, at *1 (5th Cir. 2019)("<u>Judge Lake's transfer order was *not* compelled by Judge Hughes's order of dismissal</u>"). Judge Lake's transfer was purely discretionary as to <u>Judge Lake</u>. *Id.* (emphasis added).

**B.   Judge Hughes has a History Record of Ignoring the Rules and the Law**

Extreme's counsel has significant experience with Judge Hughes's approach in handling patent infringement cases. Since January 2006, Extreme's counsel has filed ten patent infringement (35 U.S.C. § 271) lawsuits in the Southern District of Texas. Incredibly, six of the ten ended up in Judge Hughes's court, as follows:

| No. | Filed | Case Style | Cause No. | Judge |
|---|---|---|---|---|
| 1 | 02/15/2019 | *Extreme Technologies, LLC v. Stabil Drill Specialties, LLC* | 4:19-cv-00539 | ***Hughes*** |
| 2 | 03/23/2018 | *Green Source Holdings LLC v. Flotek Chemistry LLC et al.* | 4:18-cv-00910 | Miller |
| 3 | 10/26/2017 | *Wet Sounds, Inc. v. Powerbass USA, Inc. et al.* | 4:17-cv-03258 | Rosenthal |
| 4 | 07/12/2013 | *Peak Completion Technologies, Inc. v. i-Tec Well Solutions, L.L.C.* | 4:13-cv-02045 | ***Hughes*** |

| 5 | 03/15/2013 | *Peak Completion Technologies, Inc. v. i-Tec Well Solutions, LLC* | 4:13-cv-00743 | ***Hughes*** |
| 6 | 08/03/2011 | *Duco, Inc. v. Aker Solutions US, Inc. and Aker Subsea, Inc.* | 4:11-cv-02858 | Miller |
| 7 | 06/15/2011 | *Kaneka Corporation v. ZMC-USA, L.L.C.* | 4:11-cv-02250 | ***Hughes*** |
| 8 | 10/12/2006 | *Hydralift Amclyde, Inc. v. Huisman US, Inc.* | 4:06-cv-03227 | ***Hughes*** |
| 9 | 10/13/2006 | *National Electronic Devices Ltd. V. PCT Int'l, Inc.* | 4:06-cv-03234 | Ellison |
| 10 | 01/13/2006 | *National Oilwell Varco, LP v. Hydril Co., LP* | 4:06-cv-00170 | ***Hughes*** |

There are over two dozen United States District Court Judges in the Southern District, twelve of which are located in the Houston Division. Somehow, sixty percent of the patent infringement cases filed by Extreme's counsel have been "randomly" assigned to Judge Hughes. Every lawsuit filed in the Houston Division has a one in twelve chance of being assigned to Judge Hughes, or 8.3%. The odds of being assigned to Judge Hughes for six out of ten cases must be incredibly small. Judge Hughes seems to be requesting patent case assignments. The reason is known only to him. He certainly does not think much of patent plaintiffs, as demonstrated by his record.

In handling patent cases, Judge Hughes routinely denies plaintiffs Constitutional due process under the 14th Amendment and the right to a civil jury trial under the 7th Amendment, refuses to follow the Federal Rules (by denying basic discovery under Rules 26, 30-31, 33-34, and 36, Fed. R. Civ. P.), and rejects the Southern District's Local Patent Rules.

Although Judge Hughes has a copy of the U.S. Constitution on his office desk, he does not believe in the Seventh Amendment. He believes, as he once told the undersigned during a hearing, that patent plaintiffs are wrongly "throwing sand in the gears of competition." *None* of the six patent cases filed by the undersigned that ended up in Judge Hughes's court were granted a jury trial. Some cases were dismissed, and others settled after years of Judge Hughes's one-sided

rulings on behalf of accused patent infringers. Sadly, this experience is not unique. <u>Attached as Exhibit A is a list of all the patent infringement cases, according to our research, before Judge Hughes during his career on the federal bench. There are a total of 104 cases.</u> *<u>Not a single case made it to trial</u>.*

Attached as Exhibit B is "Plaintiff's Motion for Action" filed in *National Oilwell Varco, L.P. v Hydril Company L.P,* cause no. H-06-170 in the Southern District of Texas, Houston Division. The case involved crucially important technology regarding oilfield blow-out preventers, worth many millions of dollars in revenue. Exhibit B tells the sad story of Judge Hughes's typical approach to a patent case. First, Judge Hughes ordered that there could be no discovery without his permission. Then, he did not give permission – ever. Judge Hughes refused NOV's repeated efforts to enter a Docket Control Order or grant a trial setting. Five years of infringement elapsed with little or no action by Judge Hughes. Finally, under threat of a mandamus or recusal, Judge Hughes granted summary judgment to Hydril (announcing his decision before they even filed a motion), and ordered the case to mediation so that a settlement would prevent another reversal. *"The Robing Room"* website (www.therobingroom.com) contains numerous examples of civil plaintiffs who have suffered the same abusive treatment from Judge Hughes.

A recent Fifth Circuit case addressed Judge Hughes's routine practice to deny discovery and stall cases. *McCoy v. Energy XXI GOM, LLC,* 695 Fed.Appx. 750, at *758-9 (5th Cir. 2017) (emphasis added) held as follows:

> "We review a district court's decision to cut off discovery in order to rule on summary judgment for an abuse of discretion." However, summary judgment is only appropriate "'*as long as the plaintiff has had a full opportunity to conduct discovery*.'"
>
>           *                      *                    *
>
> Although the district court may cut off discovery when the record shows that further discovery is not likely to produce the facts needed to withstand the motion for

> summary judgment, [w]hen a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error.
>
> \*　　　　　　\*　　　　　　\*
>
> **The district court abused its discretion in refusing to allow McCoy to conduct sufficient discovery** in this case to support the allegations he has fairly raised, including the condition of crane tanks on other platforms, the full conditions on SMI 239D, the legal relationships among Defendants-Appellees, and so on. This error would be reversible on its own, but it is essentially moot because we are reversing and remanding for the reasons set out above. Even the limited summary judgment evidence the district court allowed already reveals genuine disputes as to the material facts. On remand, both McCoy and Defendants-Appellees deserve the opportunity to conduct discovery over the full scope of the claims and defenses at issue.

Another recent Fifth Circuit case which provides insight into Judge Hughes's approach to litigation is *U.S. v. Shell*, 602 Fed. Appx. 959 (5th Cir. 2015). For more than nine years, Judge Hughes presided over this *qui tam* False Claims Act case in which Shell was accused of depriving the United States of 19 million dollars by taking unauthorized transportation deductions. After six years of very little permitted activity, Judge Hughes granted summary judgment to Shell. The summary judgment was reversed by the Fifth Circuit, and the case was remanded with specific instructions to Judge Hughes about important evidence and relevant law. Judge Hughes completely disregarded the mandate from the Fifth Circuit and granted summary judgment to Shell again on the same issue the Fifth Circuit previously said was insufficient. *Id*. at 965-66. The Fifth Circuit held:

> **Not only did the district court fail to follow these explicit instructions, but the analysis set out in its short opinion is so broad, conclusory, and unsupported by the summary judgment record that we are compelled to conclude it did not comply with our instructions**.

*Id.* at 966 (emphasis added). The Fifth Circuit then took the unusual step of reassigning the case to another judge besides Judge Hughes, determining that doing so "would reduce waste rather than

12

create it because of the existing judge's apparent bias." *Id.* at 976, (Citing *Latiolais v. Cravins*, 574 Fed. Appx. 429, 437 (5th Cir. 2014) (emphasis added). The Fifth Circuit carefully explained its reasoning as follows:

> We conclude under both tests set out above that this case should be reassigned to a different district judge. Under the first test, we conclude that (1) we reasonably expect that the current judge would have "substantial difficulty" in setting aside his previously-expressed views, give that he failed to follow our previous mandate and applied reasoning we rejected in the previous appeal to reach the same erroneous conclusion; (2) **reassignment would be advisable to preserve the appearance of justice, given the long delays, repeated errors, and cursory reasoning in the district court's opinions to date**; and (3) reassignment would not create "waste and duplication out of proportion to any gain in preserving the appearance of fairness," given that *this case has now sat for more than eight years without progressing* past the public disclosure jurisdictional challenge. In this case, as in *Latiolais*, **reassignment to a different judge should offer a reduction in waste because if we were simply to remand, we could reasonably expect more appeals of this nature**.

*Id.* at 976 (emphasis added).

**C.     Judge Lynn Hughes Has a History of Conduct That is "Demeaning, Inappropriate, and Beneath the Dignity of a Federal Judge"**

Judge Hughes was recently reprimanded for sexist comments which the Fifth Circuit determined to be "demeaning, inappropriate, and beneath the dignity of a federal judge." *U.S. v. Swenson,* 894 F.3d 677, 681 at FN 3 (5th Cir. 2018)("*It was lot simpler when you guys wore dark suits, white shirts and navy ties.... We didn't let girls do it in the old days.*") On remand, the Fifth Circuit took the unusual but necessary step of ordering this case reassigned to any district judge other than Judge Lynn N. Hughes. *Id.* at 686. As described above, this was not the first time Judge Hughes has had a case taken away from him by the Fifth Circuit.

In *Shah v. Tex. Dept. of Crim. Justice,* Civil Action No. 4:12-cv002126 (S.D.Tex.), Judge Hughes noted that the plaintiff was of "Indian" descent and linked Indians to 'Adolf Hitler' and the 'swastika.' Transcript of Status Conference of November 26, 2012, Page 9. Judge Hughes also

said: "*Eleanor Roosevelt said staffs of one color always work better. They don't put that on the postage stamp.*" *Id*. at 12.

In the racial discrimination case of *Autry v. Ft. Bend Ind. School Dist.* 704 F.3d 344 (5th Cir. 2013), in response to plaintiff's suggestion that defendant's reference to "fried chicken" was "a long-standing racial slur," Judge Hughes rejoined – "*[t]hat's really surprising to Colonel Sanders*," and "*no black individually and no blacks collectively own the sensitivity rights to fried chicken or anything else.*" *Id.* at FN 14 and at 349. The Fifth Circuit held that the chicken remark is similar to calling a black person "boy," and ruled that Judge Hughes's comment "misses the mark, as it overlooks the racial component." *Id.* at FN 14.

In *Kafi v. Bakers Footwear Group, Inc.,* 4:10-CV-02913 (S.D. Texas – Houston 2010), Judge Hughes made racially offensive remarks suggesting that plaintiff's counsel, of Asian heritage, should move to North Korea to practice law. Transcript of Status Conference of October 15, 2010, Page 13 ("THE COURT: Do you do a lot of labor law? MR. NGUYEN: Yes, Judge. THE COURT: Okay. Why don't you guys move to North Korea? Because this is the entire body of North Korean labor law. MR. TRAN: Are you serious? THE COURT: I'm serious.")

<u>Extreme wants a judge who will be free from bias and who will follow the law</u>, including the U.S. Constitution, the Federal Rules of Civil Procedure, and the local rules of the Southern District of Texas. Judge Hughes is frequently reversed for abusing his discretion. Extreme prefers the randomly assigned Judge Bennett, who is recognized for integrity and fairness.

## CONCLUSION

The first case filed regarding this matter was dismissed without prejudice under Rule 41, Fed. R. Civ. P. Judge Hughes's "Final Dismissal" order that future filings "made in" or "removed to" the Southern District (neither happened here) was entered at a time when he had no jurisdiction,

14

and is therefore of no effect whatsoever. There are several cases in the Fifth Circuit standing for this principle. Indeed, a recent Fifth Circuit case directly on point, *Bechuck v. Home Depot*, addresses an identical situation where Judge Hughes did exactly the same thing – ordering that a previously dismissed case to be returned to his court if refiled. The Fifth Circuit ruled that Judge Hughes's order was an abuse of discretion and a non-event because he had no jurisdiction to enter the order. Undaunted, he did *precisely* the same thing in *this case*, and, in doing so, abused his discretion again. Extreme requests that Fifth Circuit authority be followed by this Honorable Court, and that the random assignment of the new lawsuit, originally filed in the judicially-found proper venue of Louisiana and transferred for convenience to Houston, be honored.

The random assignment system of the Southern District sent this lawsuit to this Court. To send it to Judge Hughes after he intentionally violated the Fifth Circuit's express ruling – again – and entered another order without jurisdiction would be a travesty. Judge Hughes routinely denies basic discovery under the Federal Rules of Civil Procedure and refuses to give trial settings required by the local rules for patent cases. His court is an inherently tilted playing field. His recent racist, sexist statements in court cause further concern about his judicial temperament. Stabil Drill's counsel is experienced, and surely knows, as all Houston federal court lawyers know, Judge Hughes's reputation for prejudice against civil plaintiffs – particularly patent plaintiffs. It is Stabil Drill who is forum shopping, not Extreme. Stabil Drill wants predisposition, favoritism, and partiality. Extreme wants fairness.

Extreme is confident that *this* Court will follow the law without bias for either side. No true litigator could want more. Extreme, therefore, urges this Court to deny Stabil Drill's motion for intra-district transfer.

Date:   June 11, 2019                                Respectfully submitted,

**RALEY & BOWICK, LLP**

 */s/ John Wesley Raley*
JOHN WESLEY RALEY
ROBERT M. BOWICK
TANYA DUGAS DAWSON
**RALEY & BOWICK, LLP**
1800 Augusta Drive, Suite 300
Houston, Texas 77057
713-429-8050 (telephone)
713-429-8045 (facsimile)
Email: jraley@raleybowick.com
            rbowick@raleybowick.com
            tdugas@raleybowick.com

**ATTORNEYS FOR PLAINTIFF
EXTREME TECHNOLOGIES, LLC**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of this reply was served on all counsel of record through the Court's ECF/PACER filing system. Courtesy copies were also emailed to opposing counsel.

 */s/ John Wesley Raley*
**John Wesley Raley**