United States District Court
Southern District of Texas
**ENTERED**
August 13, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Extreme Technologies, LLC, | § | |
| and Hard Rock Solutions, LLC, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action H-19-1977 |
| | § | |
| Stabil Drill Specialties, LLC, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court are Defendant Stabil Drill Specialties, LLC's (Stabil) Motion for Summary Judgment of Oral License, ECF No. 225, Stabil's Second Motion for Summary Judgment of Non-Infringement, ECF No. 227, and three motions to exclude expert testimony, ECF Nos. 221, 222, 223. The motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). The undersigned recommends that Stabil's Motion for Summary Judgment of Non-Infringement, ECF No. 227, be **GRANTED**. Because the court has reached this decision without relying on any of the objected-to opinions, the motions to exclude expert testimony are all **DENIED AS MOOT**. Because the court's recommendation to grant summary judgment based on noninfringement is fully dispositive, the court does not reach Stabil's Motion for Summary Judgment of Oral License, ECF No. 225, and thus recommends that it be **DENIED AS MOOT**.

### *1. Background and Procedural Posture*

This patent infringement lawsuit involves methods and apparatus for drilling wellbores. ECF No. 149-1 at 17. The three patents at issue in this case (the Patents in Suit) are:

- Method and Apparatus for Reaming Well Bore Surfaces Nearer the Center of Drift, Patent No. US 8,813,877 B1, issued August 26, 2014;

- Method and Apparatus for Reaming Well Bore Surfaces Nearer the Center of Drift, Patent No. US 8,851,205 B1, issued October 7, 2014; and

- Method and Apparatus for Reaming Well Bore Surfaces Nearer the Center of Drift, Patent No. US 9,657,526 B2, issued May 23, 2017.

ECF Nos. 149-1–149-3. All three Patents in Suit share the same disclosure, and all three stem from the same Provisional Application No. 61/473,587, filed on April 8, 2011. *Id.*

The patented technology involves the design of reamers that reduce bends or "doglegs" in the wellbore's path. ECF Nos. 149-1–149-3. A reamer is a type of tool that cuts earth from the side of the well bore thus increasing its diameter. As will be discussed further below, the relevant patent claims describe parts of the reamer called "blades," which may or may not include "teeth." The claims describe the placement and orientation of the blades on the surface of the reamer. *See, e.g.* ECF No. 149-1 at 19–20.

Plaintiffs Extreme Technologies, LLC, and Hard Rock Solutions, LLC, (collectively, Extreme) "operate as wholly owned subsidiaries of Superior Drilling Products, Inc. [SDPI,]" and are engaged in the research and development of "drilling tools, including horizontal drill string enhancement tools." Pls.' Am. Compl. ¶ 7, ECF No. 149. Hard Rock Solutions, LLC, "develops and manufactures improved, dual-stage, eccentric reamer and bore conditioning systems[,]" including a reamer named Drill-N-Ream. *Id.* ¶ 11. Defendant Stabil offers the Smoothbore Eccentric Reamer (Smoothbore; the Accused Device) for sale, rent, or lease to third parties in direct competition with the Drill-N-Ream. *Id.* ¶¶ 19–20;

2

ECF No. 151 ¶¶ 19–20. Plaintiffs allege that the Smoothbore infringes several claims of the Patents in Suit.

This lawsuit was filed on February 21, 2019, in the Western District of Louisiana. ECF No. 1. The case was transferred to this district in May 2019. ECF No. 30. In November 2021, Judge Hughes, to whom this case was then assigned, entered an order requiring the parties to "exchange a list of claim terms, phrases, and clauses that they believe require construction" and to "meet and confer to finalize the–at most–five terms, phrases, and clauses that are most integral to the dispute that need construing." ECF No. 114 at 1. In January 2022, the parties reported that Stabil sought construction of only two terms—"cutting blade" and "cutting teeth"—and that Extreme took the position that no construction beyond the "ordinary and customary" meaning was necessary for those terms. ECF No. 117 at 1. "[T]he parties agree[d] that the ordinary and customary meaning applie[d] to every other claim term of the [Patents in Suit]." *Id.* at 2.

In May 2022, Judge Hughes entered an order construing the terms "cutting blade" and "cutting teeth." ECF No. 128. Judge Hughes construed "cutting blade" according to its plain and ordinary meaning as "a blade (a structure extending a distance radially outward from the outer surface of the reamer) that cuts earth (when a reamer is rotating while drilling a well hole)[.]" *Id.* at 2–3. Judge Hughes construed "cutting teeth" according to its plain and ordinary meaning as "teeth (hard inserts) that cut earth (when a reamer is rotating while drilling a well hole)." *Id.* at 3. Judge Hughes also explained that "[t]eeth are added in some of the dependent claims not independent" and that many claims allow for a possibility, not a requirement, that the blades include teeth. *Id.* at 2.

### *2. Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 3. Legal Standards for Patent Infringement

"Whether an accused device infringes requires a two-step analysis—the court first 'determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device.'" *FullView, Inc. v. Polycom, Inc.*, No. 2023-1201, 2024 WL 1843686, at *5 (Fed. Cir. Apr. 29, 2024) (quoting *Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1326, 1335 (Fed. Cir. 2022)).

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)). "[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court," *Markman*, 52 F.2d at 970–71, even when it involves "underlying factual questions." *Packet Intel. LLC v. Netscout Sys., Inc.*, 965 F.3d 1299, 1306 (Fed. Cir. 2020) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015)) ("Claim construction is a question of law that may involve underlying factual questions."). Unless the inventor acts as a lexicographer and defines claim terms in a special way, "[t]he words of a claim are generally given their

ordinary meaning, which is 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'" *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381–82 (Fed. Cir. 2021) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc)). For purposes of claim construction, a "person of ordinary skill in the art is deemed to read the claim term not only in the context of a particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

If the accused device contains each limitation of the asserted patent claim or claims, either literally or under the doctrine of equivalents, it infringes. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) (quoting *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1372 (Fed. Cir. 2005)). On the other hand, if the accused device is lacking or does not meet at least one claim limitation, it does not infringe. *Id.* (citing *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)).

### 4. Analysis

#### A. Introduction to the technology and the parties' arguments

Following are two photos of different models of a Smoothbore reamer—the Accused Device. ECF No. 221-1 at 49, 61.

 

Next is a drawing of one model of the Accused Device's reamer viewed from the end or top. *Id.* at 47. This view shows just a single reamer section. The red portions correspond to the inserts that can be seen in the previous photos.



As the court understands it, the Accused Device employs at least two reamers separated by a length of pipe, with the teeth or inserts on each reamer (again, depicted in red above) situated approximately 180 degrees from one another. Following is a drawing of that configuration. ECF No. 228-5 at 81.



Following is another graphic, again from the end or top of the tool, showing both reamer sections of the Accused Device. Note that the view from the end does not show the pipe section separating the green portion of the reamer from the red portion of the reamer. This image was produced in Plaintiff's expert's report, ECF No. 236-8 at 4, and again in Plaintiff's Response brief, ECF No. 236 at 23. Note that both the "domed" and "flat faced" "cutting teeth" extend radially outward from and beyond the radius of the surface on which they are installed.



Following is the same image, but the court has placed purple circles around two areas that will be discussed in detail below. The key question in the case is whether the areas circled in purple are part of the "cutting area" as that term is used in the patent claims.



All the independent claims of the Patents in Suit contain similar limitations relating to "cutting blades" and "cutting area." As an example, Claim 1 of the '205 states:

> **1.** An apparatus for use on a drill string for increasing the drift diameter of a well bore during drilling, comprising:
> a substantially cylindrical first reamer having a plurality of cutting blades extending a distance radially outwardly from the outer surface of the reamer, wherein, in an order counter to the direction of rotation, a first cutting blade extends a first distance and each additional cutting blade extends an equal or greater distance than the preceding cutting blade, the plurality of blades defining a curved cutting area extending approximately 50% of the circumference of each reamer;
> a substantially cylindrical second reamer having a plurality of cutting blades extending a distance radially outwardly from the outer surface of the reamer, wherein, in an order counter to the direction of rotation, a first cutting blade extends a first distance and each additional cutting blade extends an equal or greater distance than the preceding cutting blade, the plurality of blades defining a curved cutting area extending approximately 50% of the circumference of each reamer;
> wherein the plurality of cutting blades of the second reamer are angularly displaced 180 degrees from the plurality of cutting blades of the first reamer about the axis of rotation of the drill string.

ECF No. 149-1 at 19. The dispute in this case centers around the highlighted portions of the claim. The parties dispute the meaning of "curved cutting area," and "approximately 50%."[1] The parties also dispute whether the purple circled portions in the drawing above are part of the "curved cutting area" and thus whether the Smoothbore has a "curved cutting area" that extends

---

[1] Some of the claims use the phrase "one half of the outer surface," instead of "50% of the circumference." The parties do not argue that 50% is different than half.

"approximately 50%" or "one half" of the circumference of the reamer. If it does not, then it does not infringe any of the Patents in Suit.

### B. Claim Construction

As discussed above, the infringement analysis begins with claim construction. Judge Hughes construed the only two claims that the parties asked him to. Judge Hughes ruled that "cutting blade" carries its plain and ordinary meaning, which is "a blade (a structure extending a distance radially outward from the outer surface of the reamer) that cuts earth (when a reamer is rotating while drilling a well hole)[.]" ECF No. 128 at 2. With the parentheticals removed, it reads "a blade that cuts earth." "Cutting teeth" also carries its plain and ordinary meaning, which is "teeth (hard inserts) that cut earth (when a reamer is rotating while drilling a well hole)." *Id.* at 3. Again, with parentheticals removed, it reads "teeth that cut earth."

Despite agreeing that the remaining claim terms carry their plain and ordinary meaning, Stabil now disputes the meaning of "cutting area" and "approximately 50%," and argues that further claim construction is necessary. ECF No. 227 at 15–16. Extreme argues that Stabil Drill waived additional claim construction arguments.   ECF No. 236 at 11–13. Extreme cites *Central Admixture Pharmacy Services, Inc., v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007), in which the Federal Circuit explained: "The district court found that [the defendant] waived any argument with respect to this term by failing to raise it during the claim construction phase. We agree. Since [the defendant] has not preserved this argument before the district court, we do not reach it here."

The court disagrees with both parties. First, claim construction is a legal issue. The court has the exclusive authority

to interpret claims. *Markman*, 52 F.3d at 970–71. The court cannot simply leave the disagreement to the jury. Doing so would be error on multiple levels. Moreover, up until now, neither party took the position that the disputed claim terms should be construed in any way other than their plain and ordinary meaning. Judge Hughes construed the two disputed terms discussed above according to their plain and ordinary meaning. Neither party has presented any evidence to demonstrate that "cutting area" or "approximately 50%" have any special meaning as used in the Patents in Suit. The court will construe the disputed terms according to their plain and ordinary meaning and does not require any further briefing or evidence to do so.

Claim 1 of the '205 patent, quoted in full above requires a substantially cylindrical first reamer and a substantially cylindrical second reamer. The limitations recited for both reamers are identical. Each requires a plurality of "cutting blades," the meaning of which Judge Hughes has already defined essentially to be a "blade that cuts earth." The claim then recites that "the plurality of blades defin[e] a curved cutting area." The claim itself defines the meaning of "curved cutting area." Because "blades" are that which cut earth, logic and grammar dictate that the "curved cutting area" is the area defined by the plurality of blades which cuts earth. There can be no other meaning. Accordingly, the parts of the reamer that do not "cut earth" are not part of the "cutting area."

As for "approximately 50%" or "approximately half," Extreme makes a creative but ultimately unpersuasive argument. Extreme points out that all of the independent claims of the Patents in Suit use the term "comprising." For example, Claim 1 of the '205 patent, in outline form states:

> An apparatus . . . **comprising**:
>
> a substantially cylindrical first reamer having a plurality of cutting blades . . . the plurality of cutting blades defining a curved cutting area extending approximately 50% of the circumference of each reamer;
>
> a substantially cylindrical second reamer having a plurality of cutting blades . . . the plurality of cutting blades defining a curved cutting area extending approximately 50% of the circumference of each reamer;
>
> wherein the plurality of cutting blades are angularly displaced . . .

ECF No. 149-1 at 19 (emphasis added). According to Extreme, the claim's use of the word "comprising" requires that "approximately 50%" be construed to mean "at least 50%." ECF No. 236 at 14–17. First, logically, that would mean that 50% also means 100%, which would rob the claim of any meaning. Second, as a matter of law, Extreme is incorrect.

"[T]he term 'comprising' indicates an open-ended construction." *Vehicular Techs. Corp. v. Tital Wheel Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000). "A drafter uses the term 'comprising' to mean 'I claim at least what follows and potentially more.'" *Id.* at 1383. Thus, "comprising" means that the patent must have all the listed elements that follow but may have more elements than those listed. But "comprising" "is 'not a weasel word with which to abrogate claim limitations' and 'does not reach into each of the . . . steps to render every word and phrase therein open-ended.'" *Ratheon Co. v. Sony Corp.*, 727 F. Appx 662, 672 (Fed. Cir. 2018) (quoting *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007)). Moreover, "comprising," "'while permitting additional elements not required by a claim, does not remove the

limitations that are present.'" *Id.* (quoting *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1409 (Fed. Cir. 2004)). Extreme's construction of "approximately 50%" to mean "at least 50%" would turn "comprising" into exactly the "weasel word" the Federal Circuit has warned against.

"Comprising" as used in the claims of the Patents in Suit means that the claims require a first and second reamer but could include a third and fourth reamer, or any manner of other elements. Additionally, the claims require that each of the first and second reamers have a "curved cutting area extending approximately 50% of the circumference of each reamer." Both the first and second reamers require that limitation. Stated another way, the claims do not cover an apparatus that lacks a first and second reamer, or an apparatus whose first or second reamer lacks a "curved cutting area extending approximately 50% of the circumference of [the] reamer."

As discussed, the court construes "approximately 50%" according to its plain and ordinary meaning. Plaintiff's expert has explained that "about one-third" is not "approximately 50%." ECF No. 228-8 at 206. He also testified that 40% is not "approximately 50%." *Id.* at 207. Rogers also agreed that a reasonable range for "approximately 50%" in the context of the Patents in Suit would be "between 45% and 55%." *Id.* at 222–23. No party has put forward any evidence to show that a person of ordinary skill in the art would consider "approximately 50%" to be less than 45% or greater than 55%. The court construes "approximately 50%" to be between 45% and 55%. Whether that range could be extended by a degree or two in one direction or the other is, as will be further discussed below, irrelevant for purposes of this Memorandum and Recommendation.

14

Extreme argues that adopting the plain and ordinary meaning of "approximately 50%" as between 45% and 55% would be to improperly construe the claims more narrowly than the preferred embodiments disclosed in the specification. The court disagrees. Looking at the figures in the '205 patent's specification, figure 3 discloses a curved cutting area slightly more than 50% as does figure 6. Figure 8, however, shows something significantly less than 50%, and figure 11 shows something that is almost exactly 50%. *See* ECF No. 149-1, '205 patent, figs. 3, 6, 8, 11. Thus, the disclosure is somewhat broader than the claims that were ultimately allowed. But that is because the inventor limited the claims during prosecution to avoid prior art. *See* ECF No. 228-12 at 2, 5; ECF No. 228-13 at 2–2; ECF No. 228-14 at 8 (explaining on allowance that the closest prior art reference to the Patents in Suit "expressly taught as being 'less than one-half of the circumference of the bore hole to be reamed'"). Inventors routinely narrow the scope of their claims during prosecution in order to have their claims allowed. *Cf. Poly–America, L.P. v. API Industries, Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016); *Honeywell Intern. Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1141–43 (Fed. Cir. 2004 (*en banc*).

### C. Comparison of the Accused Device to the claims

Having determined that the curved cutting area must actually cut earth, the question is whether the curved cutting area of the Smoothbore reamer extends "approximately 50%" of the circumference of the reamer. If it does not, it does not infringe any of the claims of any of the Patents in Suit.

Stabil has presented evidence showing that, when teeth or inserts are present on a reamer, regardless of their shape (domed, "sharp," etc.) they will cut earth. ECF No. 227 at 18 (citing Plaintiff's response to an earlier motion for summary judgment,

ECF No. 83 at 35–46 (citing numerous prior art references, and deposition transcripts)); ECF No. 228-7 at 136–143, ¶¶ 276–297 (Rogers Decl.). The reamer can only "cut earth" if it contacts the earth. That is, those parts of the reamer that do not contact the side of the wellbore will not cut it. Plaintiff's expert acknowledges this fact. ECF No. 228-8 at 84 (testifying that "certainly, any part that doesn't contact the rock is probably not going to cut it, right?"); *id.* at 123 (explaining that the Smoothbore would still cut earth even with the PDC cutters removed "as long as the blades are contacting the borehole"). It is clear that the teeth/inserts on the Smoothbore cut earth when the tool is rotated in a wellbore.

Extreme does not present any evidence about the parts of the Smoothbore that cut earth. Instead, Extreme's arguments center around Judge Hughes's conclusion that a "cutting blade" may include, but need not include, "cutting teeth." ECF No. 128 at 2–3. Extreme takes that conclusion to mean that, because "teeth" are not necessarily present on a "cutting blade," they should be disregarded in determining which part of the Smoothbore's reamer should be considered its "cutting blade." Extreme's argument is demonstrated by the following drawings taken directly from its summary judgment brief:



ECF No. 236 at 22. On the left is Stabil's view of what constitutes the "cutting blade," with Extreme's view on the right.[2] As can be seen, Extreme includes as part of the "cutting blade" large portions of the surface of the reamer that do not include any teeth or inserts. *Cf.* p. 9, *supra* (showing purple circles). Extreme presents no evidence at all to show that the parts of the Smoothbore lacking teeth actually cut earth when the reamer rotates in the ground.

Again, it is true that a "cutting blade," and therefore a "curved cutting surface," as those terms are used in the Patents in Suit, need not include "cutting teeth." But it does not follow that one can simply disregard cutting teeth on the Accused Device in

---

[2] Note that the view on the right is from the end and shows both the first and second reamers with the cutting parts of the reamers being disposed approximately 180 degrees from each other. In this view, one cannot see the length of pipe that separates the two reamer sections. Neither reamer section has cutting inserts/teeth all the way around, as this figure might seem to show.

determining whether it has a "curved cutting surface," and if it does, whether it extends "approximately 50% of the circumference of the reamer." Nor does it follow that parts of the reamer that do not contact the wellbore and therefore that do not cut earth can be considered part of "curved cutting surface."

Extreme cites academic sources and their expert witness for the proposition that the parts of the Smoothbore reamer shown in green and red on p. 9, above, *would* cut earth if one removed the cutting inserts. But that hypothetical reamer is not at issue in this case. Here, we have the Smoothbore reamer, which does include teeth. The teeth undisputedly contact the side of the wellbore and cut it. But there is no evidence at all that the parts of the Smoothbore reamer circled in purple on p. 9, above, actually cut earth when actually used in an actual wellbore. The undisputed evidence is that the part of the Smoothbore reamer containing teeth is the part that cuts earth and is therefore the "curved cutting area." Those teeth extend radially out beyond the surface to which they are attached. Extreme does not present any evidence to show that the surface of the reamer rotationally "behind" the teeth and radially "below" the teeth would cut earth once the insert had already done so. The only evidence in the case is that the Smoothbore's inserts cut earth. There is no evidence that any part of the reamer other than the inserts cut earth when actually in use.

The question then becomes whether the part of the Smoothbore that cuts earth extends "approximately 50% of the circumference of the reamer." The undisputed evidence is that it does not.

Stabil submitted the report of its expert, Gary R. Wooley, Ph.D. ECF No. 241-1. Wooley and others acting at his direction measured the part of the Smoothbore containing the cutting

inserts. Wooley also studied engineering drawings showing the placement of the cutting inserts for each of the several Smoothbore designs. His measurements and calculations show that the portion of the Smoothbore containing inserts, i.e., that cuts the earth, extends "at most 35.4%" of the circumference of the tool. ECF No. 241-1 at 52.[3]

Other than Extreme's argument that "approximately 50%" means "at least 50%," as the term is used in the Patents in Suit, which the court has rejected, no party has put forward any evidence to demonstrate that 35.4% could be the same as "approximately 50%." Again, Extreme's expert John Rodgers defined "approximately 50%" to be 45% to 55%." ECF No. 228-8 at 221–22. Rodgers agreed that "about one-third of the circumference of the reamer" is "not approximately 50 percent" because "[i]t's substantially less." *Id.* at 206. Rodgers also testified that neither 35% nor 40% was approximately 50% and that approximately 50% was "clearly not 33 percent, not 25 percent." *Id.* at 207, 225. The undisputed evidence shows that that 35.4 percent is not "approximately 50%."

The dispute in this case is about the meaning of the claims. There is no dispute about the physical characteristics of the Smoothbore reamer. The court concludes as a matter of law and based on the undisputed facts that the Smoothbore reamer does not infringe the properly construed claims of the Patents in Suit.

The court will address one final argument. Extreme argues that Stabil's Global Engineering Manager, Sorin Teodorescu,

---

[3] The court is aware that Extreme objects to Wooley's report and opinions. The court is relying only on Wooley's measurements. Those figures are not in dispute. Extreme objects to Wooley's claim construction arguments and his *reasons* for making the measurements he did. While the court for the most part happens to agree with Wooley's opinions on claim construction, the court does not rely on his opinions in reaching the instant decision.

conceded infringement when he testified that the Smoothbore has a blade that "goes only half-way around the tool." The exchange during his deposition was as follows:

Q. Okay. And as the -- the tool rotates, one blade contacts the earth and then the next and then the next, correct?

MS. PARTRIDGE: Objection; form.

A. No, because of their design, they're all contacting the earth in the same time.

Q. (BY MR. RALEY) I got it. Yes, sir, that's true. Because they're in a spiral. But the spiral doesn't go all the way around the tool, right? It only goes half-way around the tool?

A. Correct.

ECF No. 236-6 at 3.

The court first notes that the cited deposition took place before the court had issued its claim construction ruling. The court also agrees with Stabil that it is not clear from this exchange what question the witness was answering—does "the spiral" go all the way around the tool, or does it go "half-way around." It is not at all clear what is meant by the word "spiral" in the context of these questions. Moreover, when confronted with a more direct question about the parts of the Smoothbore that actually cut earth, Teodorescu testified that those parts constitute "30 to 33 percent of the tool body," ECF No. 241-4 at 4 (deposition page nos. 343–44), which is what the undisputed evidence shows. Teodorescu's answer to an unclear question is insufficient to raise a genuine issue of material fact sufficient to defeat summary judgment.

### 5. Conclusion

The court recommends that Stabil Drill's Motion for Summary Judgment of Non-Infringement, ECF No. 227, be **GRANTED** and that Stabil Drill's Motion for Summary Judgment of Oral License, ECF No. 225, be **DENIED AS MOOT**. The court

**DENIES AS MOOT** all motions to exclude expert testimony, ECF Nos. 221, 222, 223.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on August 13, 2024.

_____
Peter Bray
United States Magistrate Judge